UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


JULIA JACKSON,
      - Plaintiff


      v.                          CIVIL NO. 3:08-CV-1437 (CFD) (TPS)


MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
      - Defendant


## MAGISTRATE JUDGE'S OPINION

      Pursuant to 42 U.S.C. § 405 (g), the plaintiff, Julia Jackson,
seeks review of the final decision of the defendant, the
Commissioner of Social Security ("Commissioner"), denying her
application for disability insurance benefits and supplemental
security income.  For the reasons set forth below, the plaintiff's
motion to reverse the Commissioner's decision (Dkt. #20) should be
GRANTED, the Commissioner's motion to affirm (Dkt. #22) should be
DENIED, and the case should be remanded for reconsideration and
further development of the record.  28 U.S.C. § 636 (b).

      The plaintiff alleges that she became disabled on July 30,
2000, at age 55.  After the plaintiff's application for benefits was
denied, she requested a hearing before an Administrative Law Judge
("ALJ").  ALJ Roy P. Liberman held a hearing, which consisted of

testimony by the plaintiff, on August 14, 2006.  (Tr. 216-34)  The ALJ then issued a decision on October 10, 2006, finding that the plaintiff was not disabled. (Tr. 12-22) The Commissioner's Appeals Council denied the plaintiff's request for review of the ALJ's decision on July 11, 2008 (Tr. 4-6), and the plaintiff then filed the present case.

The ALJ must apply a five-step sequential evaluation process to each application for disability benefits.  See 20 C.F.R. §§ 404.1520 & 416.920.  First, the ALJ determines whether the claimant is employed.  If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment preventing her from working.  If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1.  If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.  However, if the claimant does not have a listed impairment, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant cannot perform her past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience.  The claimant is entitled to disability benefits

only if she is unable to perform other such work.  The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step.  <u>Kohler v. Astrue</u>, 546 F.3d 260, 265 (2d Cir. 2008).

In the present case, the ALJ determined that the plaintiff was unemployed and that she had the severe combination of impairments of "diabetes mellitus with neuropathy; hypertension with heart murmur; carpal tunnel syndrome; obesity; arthritis of the knees; scoliosis and hypothyroidism." (Tr. 17-18)  The ALJ then determined that the plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments. (Tr. 18)  The ALJ found that the plaintiff had the RFC "to lift/carry up to 20 pounds occasionally and 10 pounds frequently and sit, stand and walk up to 6 hours each in an 8-hour workday with occasional climbing, balancing, stooping, kneeling, crouching and crawling." (Tr. 18-21)  In light of that RFC, the ALJ determined that the plaintiff could perform her past relevant work as a school hallway monitor and tourist information clerk. (Tr. 21)  The ALJ accordingly concluded that the plaintiff was not disabled.

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. . . .  Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). In the present case, the plaintiff argues that the ALJ's evaluation of the evidence was deficient in numerous respects. For the sake of clarity, the magistrate rearranges and combines the plaintiff's many brief arguments as follows.

The plaintiff contends that the ALJ should have found that she has the severe impairment of "major depressive disorder." The ALJ acknowledged in his decision that a licensed clinical social worker diagnosed the plaintiff with "adjustment disorder with depressed mood" in February and March 2006. (Tr. 17, 190) The ALJ then explained that the plaintiff was not prescribed medication and did not testify at the ALJ hearing that depression was a disabling impairment. (Tr. 18) The ALJ concluded that the plaintiff's adjustment disorder was not severe. The plaintiff points out that the diagnosis of adjustment disorder was followed by a diagnosis of "major depressive disorder single episode moderate" made by Dr. Richard Maiberger, a psychiatrist. (Tr. 193) The plaintiff was also assigned a "global assessment of functioning" (GAF) score indicating "serious symptoms or serious impairment in . . . functioning." (Tr. 191; Dkt. #20-1, pp. 17-18) Because the ALJ did not discuss Dr. Maiberger's diagnosis and did not refer to the plaintiff's GAF score, it is unclear whether the ALJ overlooked that information when he determined that the plaintiff's depression was

4

not severe.  The magistrate concludes that the case should be remanded to allow the ALJ to reconsider his findings in light of Dr. Maiberger's diagnosis and the plaintiff's GAF score.

The plaintiff next argues that she has the severe impairment of "hypertensive cardiovascular disease and coronary artery disease with ischemia," but the ALJ incorrectly characterized the impairment as "hypertension with heart murmur." (Dkt. #20-1, p. 17; Tr. 17) In support of her argument, the plaintiff states that she had a positive heart scan and stress test and was prescribed nitroglycerine for chest pain in September 2005. (Tr. 170, 181) The Commissioner notes, however, that records from Norwalk Community Health Center later indicated that the positive scan and test were false. (Tr. 185, 212)  In light of that false reading, the magistrate concludes that it was proper for the ALJ not to have characterized the impairment in the manner for which the plaintiff advocates.

The plaintiff also argues that the ALJ should have added seasonal allergies, "possible" fibromyalgia, and cataracts to the list of her severe impairments. (Dkt. #20-1, pp. 11-14)  As to the seasonal allergies, the record contains an "initial treatment summary" from the AmeriCares Free Clinic on August 31, 2004, indicating that a "chief complaint" of the plaintiff was seasonal allergies. (Tr. 150)  The record also contains a progress note from Norwalk Community Health Center dated April 6, 2006, indicating that

5

the plaintiff was given Zyrtec and Flonase for her seasonal allergies. (Tr. 199)  Those documents do not explain whether the plaintiff's seasonal allergies were severe, and there is no evidence in the record addressing that issue.  Accordingly, it was proper for the ALJ to exclude seasonal allergies from his findings regarding the plaintiff's severe impairments.

As to the plaintiff's "possible" fibromyalgia, she cites progress notes from Norwalk Community Health Center indicating that she might have that condition. (Tr. 198)  The plaintiff then contends that the ALJ should have investigated that possibility by requesting more information from her treating physicians and ordering a consultative examination by a rheumatologist.  As the Commissioner points out, however, the plaintiff never alleged that fibromyalgia was one of her impairments, and she failed to satisfy her burden of producing medical evidence showing that she actually suffered from fibromyalgia.  See 20 C.F.R. § 404.1512 (c). Therefore, the ALJ was not required to investigate the plaintiff's "possible" fibromyalgia.

As to the plaintiff's cataracts, she argues that the ALJ should have obtained medical records from her opthalmologist, Dr. Scott Spector.  In opposition, the Commissioner cites documents in the record suggesting that the plaintiff's ability to see was not severely impaired.  For example, Dr. Bridget Patterson-Marshall examined the plaintiff on April 20, 2005 and noted that "[h]er

visual acuity was not corrected and gave a value of 20/25 on the right and 20/30 on the left." (Tr. 159) Despite that evidence, the contents of Dr. Spector's records are unknown. "Even when a claimant is represented by counsel . . . the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). It is possible that Dr. Spector's records could alter the ALJ's findings. Therefore, the magistrate believes that the ALJ should obtain Dr. Spector's records and consider whether they have any impact on his prior decision.

The plaintiff also contends that the ALJ should have obtained additional medical records from her physicians at Norwalk Community Health Center, Dr. Dragos Filimon and Dr. Vij, whose first name is not given in the record and motion papers, and also from Dr. Maiberger, the psychiatrist. As with the records of the opthalmologist, Dr. Spector, the contents of the additional records of Dr. Filimon, Dr. Vij, and Dr. Maiberger are unknown. It is possible that those records could alter the ALJ's findings, so the ALJ should obtain the records and consider whether they have any impact on his prior decision.

The plaintiff's last set of arguments relates to the ALJ's assessment of her RFC. Although the ALJ will need to revisit that assessment after obtaining the missing medical records, the

plaintiff raises two RFC issues that the magistrate can consider at this time.   The first issue concerns Dr. Patterson-Marshall's examination of the plaintiff on April 20, 2005.   Dr. Patterson-Marshall wrote the following relevant sentences in the "impression" section of her report:  "[The plaintiff] needs to avoid excessive sitting.   She may have to function in the environment where she would get up every 20 minutes and maybe no more than an hour and a half per day."  (Tr. 159-60)  The plaintiff argues that the ALJ should have accepted Dr. Patterson-Marshall's impression because it showed that the plaintiff could not perform her past relevant work as a tourist information clerk, which involves significant sitting. The ALJ rejected Dr. Patterson-Marshall's impression because she did not support it with objective findings.  The ALJ concluded that Dr. Patterson-Marshall "appear[ed] to have based her opinion on the claimant's subjective complaints of inability to sit for prolonged periods without supporting objective findings."  (Tr. 21)  Instead, the ALJ relied on the RFC assessments of Dr. Nathaniel Kaplan and Dr. Firooz Golkar, who did not treat or examine the plaintiff but found that she could sit for about six hours in an eight-hour workday.  (Tr. 162, 187)

Pursuant to 20 C.F.R. §§ 404.1527 (d) and 416.927 (d), the opinion of a physician who has treated or examined the claimant is generally entitled to more weight than the opinion of a physician who has not treated or examined the claimant.  However, a treating

physician's opinion is not always entitled to controlling weight. The regulations explain that there are several factors to be considered in assigning weight to a medical opinion, such as the length, nature, and extent of the treating relationship and whether the opinion is consistent with the entire record and supported by the evidence.  In the present case, the magistrate agrees with the Commissioner that the ALJ rejected Dr. Patterson-Marshall's impression for a legitimate reason, namely, lack of evidentiary support.

The second RFC issue concerns the plaintiff's severe impairments of arthritis, carpal tunnel syndrome, and obesity.  The plaintiff argues that the ALJ improperly found that those impairments did not prevent the plaintiff from working.  The ALJ explained that the plaintiff had no record of ongoing treatment for arthritis or carpal tunnel syndrome.  (Tr. 19)  Despite those impairments, and despite the plaintiff's weight of approximately 215 pounds and height of approximately 5 feet 4 inches, the ALJ noted the plaintiff's testimony that she is able to shop, clean, and care for her disabled 45-year-old daughter.  (Tr. 21)  The ALJ therefore rejected the plaintiff's subjective complaints that her arthritis, carpal tunnel syndrome, and obesity totally disabled her and prevented her from performing her past relevant work as a school hallway monitor and tourist information clerk.  Credibility determinations are entrusted to the ALJ because the ALJ has the

9

opportunity to observe the demeanor of the witness.  <u>Carroll v.</u>
<u>Sec'y of Health & Human Services</u>, 705 F.2d 638, 642 (2d Cir. 1983).
The magistrate agrees with the Commissioner that the ALJ properly
considered the three impairments.  The plaintiff lacks a history of
treatment for arthritis and carpal tunnel syndrome, and she is able
to perform many activities of daily life despite those conditions
and her obesity.

Accordingly, the magistrate recommends that the plaintiff's
motion to reverse (Dkt. #20) be GRANTED, the Commissioner's motion
to affirm (Dkt. #22) be DENIED, and the case be remanded to allow
the ALJ to reconsider his finding regarding the plaintiff's
depression; to obtain the missing medical records from Dr. Spector,
Dr. Filimon, Dr. Vij, and Dr. Maiberger; and to consider whether
those records have any impact on the ALJ's prior decision.  Either
party may timely seek review of this recommended ruling in
accordance with Rule 72 (b) of the Federal Rules of Civil Procedure.
Failure to do so may bar further review.  28 U.S.C. § 636 (b)(1)(B);
<u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir.
1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 23rd day of June, 2010.**


**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**

10